IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| DEBORAH ANN SMITH, | ) | 8:12CV226 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| PAYPAL, Inc., et al., | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on Defendant PayPal, Inc.'s ("PayPal") Motion to Dismiss and Motion to Strike (Filing No. 23); Defendants Lynette Lane, Carmen Sieburg, Todd England, Troy Kuker, Suzanne Combs-Brown, Michelle Kuhr, and Mike Lenkersdorfer's[1] (collectively, "the Individual Defendants") Motion to Dismiss (Filing No. 25); and Plaintiff Deborah Ann Smith's ("Plaintiff") Motion for Counsel and Motion to Amend Complaint (Filing No. 27).  For the reasons set forth below, the court will deny Plaintiff's Motions without prejudice, grant the Individual Defendants' Motion to Dismiss, grant PayPal's Motion to Dismiss in part, and deny PayPal's Motion to Strike.

## BACKGROUND

On June 29, 2012, Plaintiff filed a Complaint alleging that Defendants engaged in age-based discrimination, disability-based discrimination, and age and disability-based retaliation in violation of the Age Discrimination in Employment Act of 1967

---

[1]Plaintiff named "Troy Kucker" and "Mike Lenkersdofer" as Defendants in this matter.  (Filing No. 1 at CM/ECF p. 1.)  The parties' filings reflect that these Defendants' last names are actually spelled "Kuker" and "Lenkersdorfer."  The court will use the correct spelling of these Defendants' names in this Memorandum and Order.  In addition, the court will direct the clerk's office to update the court's records to reflect the correct spelling of these parties' names.

("ADEA"), 29 U.S.C. §§ 621-634; the Nebraska Age Discrimination in Employment Act ("NADEA"), Neb. Rev. Stat. §§ 48-1001 to 48-1010; the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101-12213; and the Nebraska Fair Employment Practice Act ("NFEPA"), Neb. Rev. Stat. §§ 48-1101 to 48-1126. (*See* Filing No. 1 at CM/ECF p. 14.) Her specific allegations are diverse and describe events spanning several years. The court will summarize Plaintiff's allegations in the following paragraphs.

Plaintiff was at all relevant times employed by PayPal. On December 11, 2006, she "went on short term disability." (Filing No. 1 at CM/ECF p. 2.) She was diagnosed with breast cancer later that month, and complications associated with her cancer treatment caused her to miss work "for long periods of time." (*Id.* at CM/ECF pp. 2-3.) She claims that during this time, her "managers and supervisors discriminated against [her] and created a hostile work environment," and her "peers . . . made comments that [she is] a liability to them because of [her] illness." (*Id.* at CM/ECF p. 3.) Specifically, Plaintiff alleges that in December 2007, a supervisor named Jon Angaldo was "very critical and demeaning of [her] performance" and "would try to intimidate [her] by coming over to [her] desk . . . [and] using hand gestures to get [her] to speed up [her] call with [her] customer." (*Id.* at CM/ECF pp. 3-4.) Plaintiff alleges that the harassment she faced at PayPal caused her to "seek therapy for PTSD and severe depression." (*Id.* at CM/ECF p. 3.)

In March 2009, Plaintiff returned to work following a surgery and was placed under the supervision of Defendant Todd England ("England") in the company's Marketing and Promotions department. (*Id.* at CM/ECF p. 4.) She alleges that she "almost immediately" noticed that her "Stats," which measure employee performance at PayPal, were being manipulated by supervisors—a practice that, she claims, is known to be used "by the supervisors to get rid of employees." (*Id.* at CM/ECF pp. 4-5.) When Plaintiff reported the Stats errors, England failed to ensure that they were corrected properly. (*Id.* at CM/ECF pp. 5-6.)

2

In June 2009, Plaintiff was transferred to Defendant Troy Kuker's ("Kuker") Marketing and Promotions team, which made her feel "alienated from [her former] teammates." (*Id.* at CM/ECF p. 6.) She approached various people, including England and Kuker, and told them that this move was "created by them to ensure [that she] was set up to fail." (*Id.* at CM/ECF p. 7.) Plaintiff was told that the move "would only be for a month or so." (*Id.*)

Plaintiff alleges that she was placed back with her original teammates in September 2009, but management "tried building a wedge between [them]." (*Id.*) She adds that she was stationed directly in front of Kuker as "an intimidation method," and "when that did not work," Defendant Suzanne Combs-Brown ("Combs-Brown"), Kuker, and Human Resources ("HR") "launched an 'investigation'" of Plaintiff and two of her colleagues for "having inappropriate conversations" at their desks. (*Id.* at CM/ECF pp. 7-8.) After the investigation, Combs-Brown ordered Plaintiff to remove her scented lotion from the premises, but other employees were allowed to keep similar lotions on their desks. (*Id.* at CM/ECF p. 9.) Plaintiff claims that these efforts were intended to separate her from her friends and bait her into becoming insubordinate. (*Id.* at CM/ECF pp. 8-9.)

Plaintiff alleges that sometime during 2009 and 2010, she began working 17 hours per day to "recover wages" that she lost during her disability leave. (*Id.* at CM/ECF p. 9.) She claims that when she was "unable to complete all of the hours [that she] signed up for[,] . . . [she] was written up." (*Id.*) She also claims that unnamed people continued to manipulate her Stats and refused to allow her to participate in a focus group. (*Id.* at CM/ECF p. 10.) In addition, at some point after Plaintiff "applied for FMLA," Defendant Kuker "tried intimidating and embarrassing [her] in front of [her] peers." (*Id.*)

In September 2010, PayPal's HR department "was let go," and it appears that human resources tasks were outsourced to a company called "MyHR" in Utah. (*Id.*

3

at CM/ECF p. 11.)  Plaintiff told Defendant Michelle Kuhr ("Kuhr") that she "was upset about the loss of [the] HR Department," and Kuhr responded, "[m]aybe now we can get rid of people faster." (*Id.*)  Kuhr's comment upset Plaintiff, and she reported it to HR.  (*Id.*)  Plaintiff claims that after she made this report, "things got worse for [her]." (*Id.*)

In September or October 2010, Plaintiff received a Performance Improvement Plan ("PIP") and was told to "bring up [her] stats" within 45 days to avoid consequences "up to and including termination."  (*Id.* at CM/ECF p. 12.)  Plaintiff "contacted MyHR in Utah and reported this."  (*Id.*)  She claims that her "health continued to decline because of the hostile work environment." (*Id.*)

Plaintiff took disability leave in October 2010, and she did not return to work until December 2011.  (*Id.*)  Upon her return, she was "demoted to Site, Security and Support" under the supervision of Defendants Kuhr and Carmen Sieburg ("Sieburg"). (*Id.* at CM/ECF pp. 12-13.)  Plaintiff alleges,

> Since my return the hostility has escalated to the point of filing retaliation on May 2012.  They continue to manipulate all of my Stats – I will be filing an amended plan to this complaint once the Nebraska Equal Opportunity Commission completes their investigation and I receive my letter to sue.  [There] will be several other people named in the new Complaint.

(*Id.* at CM/ECF p. 13.)  She also alleges that her "personal PayPal account has been tampered with since returning to work."  (*Id.*)

The Complaint states that Plaintiff presented her claims to "Human Resources at PayPal[,] MyHR in Utah[,] NEOC[,] and EEOC," and that she "received a letter to sue."  (*Id.* at CM/ECF p. 15.)  She adds that she "recently filed retaliation charges" in May 2012.  (*Id.*)

4

A charge of discrimination dated January 27, 2011,[2] is attached to the Complaint. (*See id.* at CM/ECF pp. 17-18.)  The charge, which was filed with both the Nebraska Equal Opportunity Commission ("NEOC") and the United States Equal Employment Opportunity Commission ("EEOC"), states that between September 1, 2009, and October 19, 2010, Plaintiff suffered retaliation and discrimination based on age and disability.  (*Id.* at CM/ECF p. 17.  *See also id.* at CM/ECF p. 19.)  It also states that Plaintiff is 54 years old and suffers from disabilities; that since 2009 she has been "frequently disciplined, denied raises, and subjected to less favorable terms and conditions"; that these "less favorable terms and conditions" include Kuker manipulating her Stats, segregating her from her team for a month and a half, preventing her from asking questions when she needed help, giving her performance evaluations every 45 days instead of every 60 days, being upset with her (but not others) when she discovered fraud, and preventing her from learning about new products in focus groups; that her coworkers have told her that Kuker "wants to get rid of [her] because of [her] chronic disabilities; that after she complained about age- and disability-based discrimination in 2009, Defendant PayPal retaliated by continuing to discipline her, deny her raises, and subject her "to less favorable terms and conditions"; and that in approximately July 2010, she complained to various people, including Michelle Cossky in HR, that she was "being treated different because of [her] age and disability status," but Cossky responded by informing Plaintiff that she "was not being treated different."  (*Id.* at CM/ECF pp. 17-18.)  The charge was processed by the commissions, and Plaintiff received a right to sue letter from the EEOC on or about March 28, 2012.  (*Id.* at CM/ECF p. 35.)

---

[2] The charge indicates that it was signed by Plaintiff on January 26, 2011, and that it was received by the Nebraska Equal Opportunity Commission on January 27, 2011. (*See* Filing No. 1 at CM/ECF pp. 17-18.)

A second charge of discrimination dated May 29, 2012,[3] is also attached to the Complaint. (*Id.* at CM/ECF pp. 37-39.)  Generally, the second charge states that since Plaintiff returned from work following a leave of absence for breast cancer treatment, she has been demoted, "subjected to different training," and given different "terms and conditions" due her age, disability, record of disability, and previous charge of discrimination. (*Id.* at CM/ECF p. 37.)  More specifically, the second charge states that Plaintiff suffered from discrimination between December 27, 2011, and May 8, 2012; that she was demoted on December 21, 2011, following her treatment-related leave of absence; that she was assigned to work under Kuhr, who was the subject of Plaintiff's prior complaints; that Plaintiff was treated as "a new hire" rather than "a tenured employee"; that Plaintiff was required to undergo more extensive training than "other new hires"; that PayPal "immediately began the process to make [her] fail by manipulating [her] C stats and [her] phone time and adherence"; that all of her calls "were listened to and recorded" by Seiburg; that Defendant Kuhr manipulated the conditions of a test that Plaintiff was required to take on January 17, 2012; that Plaintiff was "called in for raising [her] voice on the floor" on January 18, 2012; that Kuhr and others listened to Plaintiff's calls on February 17, 2012; that on February 27, 2012, Seiburg disciplined Plaintiff for making complaints to HR on February 17; that someone tampered with Plaintiff's "EBay" account in April 2012, and PayPal refused to investigate the tampering; that Lori Hoffman and others interfered with Plaintiff's ability to prepare for a required class in April 2012; that on May 7, 2012, Lori Hoffman changed the date of her weekly meeting with Plaintiff, "hoping [Plaintiff] would miss it"; and on May 15, 2012, Hoffman responded to a complaint raised by Plaintiff by stating, "You won't have to deal with that much longer." (*Id.* at CM/ECF pp. 37-39.)

---

[3] Unlike the first charge, the second charge does not bear a stamp indicating that it was received by either the NEOC or EEOC. (*See* Filing No. 1 at CM/ECF pp. 37-39.)  As noted previously, however, Plaintiff has alleged that she filed a retaliation charge in May 2012. (*See id.* at CM/ECF p. 13.)  It appears that Plaintiff signed the charge on May 29, 2012. (*Id.* at CM/ECF p. 39.)

There is no indication that Plaintiff has received a right to sue letter in connection with the second charge. (*See generally* Filing No. 1; *see also id.* at CM/ECF p. 13 ("I will be filing an amended plan to this complaint once the Nebraska Equal Opportunity Commission completes their investigation and I receive my letter to sue.").)

On December 3, 2012, PayPal moved to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, to strike certain allegations from the Complaint. (Filing No. 23.) Also on December 3, 2012, the Individual Defendants filed a Motion to Dismiss the Complaint pursuant to Rule 12(b)(6). (Filing No. 25.) Plaintiff did not file a timely response to either motion. However, on February 6, 2013, Plaintiff filed a Motion for Counsel and a Motion to Amend the Complaint. (Filing No. 27.)

In her Motion to Amend, Plaintiff states that her original Complaint is based on events that occurred "up until [she] had to leave for major surgery," and she implies that her amended complaint would include allegations of "hostile work environment and . . . harassment" that occurred after her return from that leave. (Filing No. 27 at CM/ECF p. 1.)[4] Specifically, Plaintiff alleges that upon her return in December 2011, she was demoted and placed under Kuhr's supervision; that Kuhr was unprepared for Plaintiff's return to work on December 21, 2011; that despite being told initially that she would not have to complete a certain test, Plaintiff was placed in a training class in January 2012; that someone added an address to Plaintiff's PayPal account, and Plaintiff was told "not to worry about it"; that Kuhr frustrated Plaintiff by manipulating the conditions of a test on January 17, 2012; that on February 17, 2012,

---

[4] As noted above, the original complaint does describe incidents that allegedly occurred after Plaintiff's return to work in December 2011. (*See* Filing No. 1 at CM/ECF pp. 12-13.) However, Plaintiff's first charge of discrimination is limited to events that occurred before she took leave between October 2010 and December 2011.

Jen Douglas and Kuhr caused Plaintiff to become upset, and Kuhr attempted to manipulate Plaintiff into leaving the office; that after Plaintiff decided not to leave the office, Kuhr "wrote [her] up" for causing a disturbance on the floor and refusing an order to leave the premises; that on February 27, 2012, Plaintiff was moved to Laurie Hoffman's team, where she endured abuse, Stats manipulations, and other hardships designed to interfere with her bonuses and evaluations; that on April 18-20, 2012, Hoffman did not allow Plaintiff to take a mandatory pretest during working hours, and a number of Plaintiff's supervisors expressed surprise that she was able to complete the test on her own time; that at unspecified times, Hoffman was rude and made three separate attempts to isolate Plaintiff from her peers; that between April 5 and April 10, 2012, "employees at PayPal" harassed Plaintiff by making several changes to Plaintiff's EBay account; that supervisors at PayPal failed to correct the changes during the month of April, hoping to make Plaintiff "frustrated enough to log into the back end of [her] PayPal account and fix it [herself,] which would result in termination"; that on July 5, 2012, Hoffman and other PayPal managers attempted to "throw [Plaintiff] off balance" by meeting with her to discuss the "tampering" that occurred in her PayPal account; that on August 6, 2012, Plaintiff "filed a [short-term disability claim . . . due to sever[e] depression, PTS[D], [and] illness caused by the ongoing hostile work environment," and PayPal obtained Plaintiff's medical information in order "to take action against [her] when [she] returned to work"; that PayPal took action to frustrate Plaintiff's claim; and that Plaintiff is "not the only person they have done this to." (*Id.* at CM/ECF pp. 1-47.)

Many of the facts alleged in Plaintiff's Motion to Amend overlap with those set forth in Plaintiff's second charge of discrimination. However, as already stated in this Memorandum and Order, there is no indication that Plaintiff has received a right to sue letter for that charge.

8

## ANALYSIS

### I.    Plaintiff's Motion for Counsel and Motion to Amend the Complaint

Plaintiff asks that the court "appoint counsel due to the complexity of this case." (Filing No. 27 at CM/ECF p. 32.)  "Indigent civil litigants do not have a constitutional or statutory right to appointed counsel."  *Davis v. Scott*, 94 F.3d 444, 447 (8th Cir. 1996) (quoting *Edgington v. Missouri Dep't of Corrs.*, 52 F.3d 777, 780 (8th Cir. 1995)).   However, "[t]he trial court has broad discretion to decide whether both Plaintiff and the court will benefit from the appointment of counsel, taking into account the factual and legal complexity of the case, the presence or absence of conflicting testimony, and Plaintiff's ability to investigate the facts and present [her] claim."  *Id.* (citations omitted).   Each of the relevant factors weighs against the appointment of counsel for Plaintiff.   This case is not factually or legally complex, Plaintiff has proven to be capable of investigating the facts and presenting her claim, and, at this stage of the proceeding, Plaintiff has not been confronted with conflicting evidence or testimony.   Therefore, the court will deny Plaintiff's Motion for Counsel without prejudice.

Plaintiff has also moved for leave to amend the complaint.   (*See generally* Filing No. 27.)   Plaintiff's motion was not filed within 21 days after she served her Complaint, nor was it filed within 21 days after Defendants served their Rule 12(b) motions; thus, Plaintiff has forfeited her opportunity to amend the Complaint "once as a matter of course" pursuant to Federal Rule of Civil Procedure 15(a)(1).

When leave to amend is no longer available under Rule 15(a)(1), "a party may amend its pleading only with the opposing party's written consent or the court's leave."  Fed. R. Civ. P. 15(a)(2).   Because Defendants oppose Plaintiff's Motion to Amend (*see* Filing No. 28), Plaintiff can amend her complaint only if this court gives her leave to do so.

Although courts "should freely give leave" to amend a complaint "when justice so requires," Fed. R. Civ. P. 15(a)(2), "[a] denial of leave to amend may be justified by 'undue delay, bad faith on the part of the moving party, futility of the amendment or unfair prejudice to the opposing party,'" *Amrine v. Brooks*, 522 F.3d 823, 833 (8th Cir. 2008) (quoting *United States ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 557 (8th Cir. 2006)). Defendants argue persuasively that Plaintiff's Motion to Amend the Complaint should be denied because the proposed amendments would be futile. (*See generally* Filing No. 28.) In the interests of efficiency and clarity, the court will discuss the futility of the proposed amendments in detail when analyzing Defendants' Motions to Dismiss. Here, it is only necessary to state that the court will deny Plaintiff's motion to amend her complaint.

## II.   Defendants' Motions to Dismiss

PayPal and the Individual Defendants have filed Motions to Dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Filing Nos. 23 and 25.) Although the court made a preliminary determination that the Complaint states plausible claims under the ADA and ADEA (*see* Filing No. 8), Defendants argue persuasively that this determination merits reconsideration (*see generally* Filing Nos. 24 and 26). For the following reasons, the Individual Defendants' Motion to Dismiss will be granted, and PayPal's Motion to Dismiss will be granted in part.

### A.   Standard of Review

"Federal Rule of Civil Procedure 8 requires that a complaint present 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009). In order to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S.

10

544, 570 (2007)).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Id.* (quoting *Twombly*, 550 U.S. at 555).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.* (quoting *Twombly*, 550 U.S. at 557).  Also, although a court must accept as true all factual allegations when analyzing a Rule 12(b)(6) motion, it is not bound to accept as true legal conclusions that have been framed as factual allegations.  *See id.* ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").  However, a pro se plaintiff's allegations must be construed liberally.  *See, e.g., Parker v. Porter*, 221 F. App'x 481, 481-82 (8th Cir. 2007) (citing *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985)).

"A claim has facial plausibility when Plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (citation omitted).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (quoting *Twombly*, 550 U.S. at 556).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"  *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).  In other words, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'shown'–'that the pleader is entitled to relief.'"  *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)) (brackets omitted).

Although dismissals under Rule 12(b)(6) are typically judgments on the merits made with prejudice, these dismissals "can be rendered without prejudice if the court so specifies."  *Orr v. Clements*, 688 F.3d 463, 465 (8th Cir. 2012).

11

### B.    The Individual Defendants' Motion to Dismiss

The Individual Defendants argue that the Complaint fails to state a claim against them under the ADA and the ADEA because these statutes do not allow a plaintiff to hold coworkers or supervisors personally liable for employment discrimination.  (*See* Filing No. 26 at CM/ECF pp. 1, 4-8.)

Neither the United States Supreme Court nor the Eighth Circuit Court of Appeals have squarely addressed whether an individual may be held personally liable under Title I of the ADA, which prohibits "covered entit[ies]" from discriminating against employees on the basis of disability.  *See* 42 U.S.C. § 12112(a).  The Eighth Circuit has signaled, however, that individual liability is not available.  *See Stanback v. Best Diversified Prod., Inc.*, 180 F.3d 903, 906 (8th Cir. 1999) ("[T]he individual defendants argued (correctly) that neither Title VII nor the ADA authorizes the imposition of liability on employees."); *Alsbrook v. City of Maumelle*, 184 F.3d 999, 1005 n.8 (8th Cir. 1999) (citing *Butler v. City of Prairie Village*, 172 F.3d 736, 744 (10th Cir. 1999); *Mason v. Stallings*, 82 F.3d 1007, 1009 (11th Cir. 1996); and *EEOC v. AIC Sec. Investigations, Ltd.*, 55 F.3d 1276, 1280-82 (7th Cir. 1995)).  Circuits that have analyzed the issue find that the ADA allows neither discrimination nor retaliation claims to be brought against individual defendants.  *See, e.g., Spiegel v. Schulmann*, 604 F.3d 72, 79 (2d Cir. 2010); *Albra v. Advan, Inc.*, 490 F.3d 826, 829-34 (11th Cir. 2007); *Butler*, 172 F.3d at 743-44; *AIC Sec. Investigations, Ltd.*, 55 F.3d at 1280-82.  Significantly, courts in this district have also determined that individuals cannot be held personally liable for discrimination under Title I of the ADA.  *See, e.g., Rickert v. Midland Lutheran College*, No. 8:07CV334, 2007 WL 2933229, at *1 (D. Neb. Oct. 5, 2007).

Similarly, although the Eighth Circuit has not yet decided the issue, most other federal circuit courts of appeals have concluded that individuals may not be held personally liable under the ADEA.  *See, e.g., Medina v. Ramsey Steel Co., Inc.*, 238

12

F.3d 674, 686 (5th Cir. 2001); *Smith v. Lomax*, 45 F.3d 402, 403 n.4 (11th Cir. 1995); *Birkbeck v. Marvel Lighting Corp.*, 30 F.3d 507, 510 (4th Cir. 1994); *Miller v. Maxwell's Int'l*, 991 F.2d 583, 587 (9th Cir. 1993). Courts in this district have adopted this rule as well.  *See, e.g., Rickert*, 2007 WL 2933229, at *1; *Feller v. McCarthy*, No. 4:07CV3117, 2007 WL 3204463, at *3 (D. Neb. Oct. 30, 2007).

The foregoing authorities are persuasive.  The court finds that to the extent that Plaintiff seeks to hold Defendants Lane, Sieburg, England, Kuker, Combs-Brown, Kuhr, and Lenkersdorfer personally liable for violations of the ADA and ADEA, her Complaint must be dismissed for failure to state a claim upon which relief may be granted.  Also, it merits mention that the allegations listed in Plaintiff's Motion to Amend the Complaint cannot alter this result; thus, the proposed amendments are clearly futile insofar as the ADA and ADEA claims against the Individual Defendants are concerned.

Plaintiff's NFEPA and NADEA claims against the Individual Defendants fail under Rule 12(b)(6) for the same reasons.  NFEPA and NADEA's express terms limit liability to employers.  NFEPA provides only for liability against *an employer*, and it defines an employer as "a person engaged in an industry who has fifteen or more employees . . . ." Neb. Rev. Stat. §§ 48-1102, 48-1104.  NADEA provides only for liability against *an employer*, and it defines an employer as "any person having in his or her employ twenty of more employees . . . ." Neb. Rev. Stat. §§ 48-1002, 48-1004.  NFEPA and NADEA have been applied in the same manner as the ADA and the ADEA.  *See Orr v. Wal-Mart Stores, Inc.*, 297 F.3d 720, 723 (8th Cir. 2002) (disability discrimination provisions in the NFEPA are patterned after the ADA); *Billingsley v. BFM Liquor Management, Inc.*, 645 N.W.2d 791, 801 (Neb. 2002) (when applying the provisions of the Nebraska age discrimination act, the Nebraska Supreme Court will look to federal decisions interpreting the ADEA).  Therefore, Plaintiff's state-law claims against the Individual Defendants are also dismissed.

13

### C.    PayPal's Motion to Dismiss

PayPal argues first that, insofar as Plaintiff's claims are based on events that occurred after October 2010, her claims must be dismissed because she has not exhausted her administrative remedies.  (Filing No. 24 at CM/ECF pp. 7-9.)

Prior to filing a civil action alleging violations of the ADA or the ADEA, a plaintiff must exhaust her administrative remedies by submitting her discrimination claims in an EEOC charge and receiving a "right to sue" letter.  *See, e.g.,* 42 U.S.C. § 12117(a) (stating that the remedies and procedures set forth in Title VII, including those pertaining to exhaustion, apply to persons alleging discrimination based on disability); 42 U.S.C. § 2000e-5 (stating that a person may bring a Title VII action in federal court after filing a charge of discrimination and receiving a right to sue notice); *Parisi v. Boeing Co.*, 400 F.3d 583, 585 (8th Cir. 2005) ("Exhaustion of administrative remedies is a condition precedent to the filing of an action under the ADEA in federal court."); *Demonbrun v. Stevens Transp.*, No. 8:06CV534, 2007 WL 28415, at *1 (D. Neb. Jan. 3, 2007) ("In an ADA case, Plaintiff is required to exhaust his administrative remedies by first seeking relief through the Equal Employment Opportunity Commission . . . or the Nebraska Equal Opportunity Commission . . . .").  After the claimant receives a right to sue letter, she may file a complaint that includes claims of employment discrimination "as broad as the scope of the EEOC investigation which reasonably could be expected to result from the administrative charge."  *Parisi*, 400 F.3d at 585.

As outlined previously, the first charge of discrimination alleges that Plaintiff suffered various acts of discrimination between September 1, 2009, and October 19, 2010.  (*See* Filing No. 1 at CM/ECF pp. 17-18.)  According to the Complaint, Plaintiff went on a leave of absence between October 2010 and December 2011.  (*Id.* at CM/ECF p. 12.)  A second charge of discrimination alleges that Plaintiff suffered discrimination after her return from leave (specifically, between approximately

14

December 27, 2011, and May 8, 2012).  (*Id.* at CM/ECF pp. 37-39.)  Thus, the first charge covers events leading up to Plaintiff's fourteen-month leave, and the second charge covers events that occurred after her return to work.  Generally, the Complaint incorporates the allegations set forth in the first charge—though it also alleges that Plaintiff suffered discrimination when she returned to work after her leave.  In contrast, the allegations appearing in Plaintiff's Motion to Amend focus almost exclusively on events that occurred after Plaintiff returned from leave in December 2011.  (*See generally* Filing No. 27.)[5]

PayPal submits that because Plaintiff has not received a right to sue letter for her second charge of discrimination, the court must dismiss all claims based on events that occurred after Plaintiff took leave in October 2010.  (Filing No. 24 at CM/ECF pp. 7-8.)  It adds that for the same reason, it would be futile to allow Plaintiff to amend her Complaint in order to incorporate the allegations set forth in her Motion.  (Filing No. 28 at CM/ECF pp. 5-6.)

The court agrees with PayPal.  Although Plaintiff received a right to sue letter for her first charge of discrimination, that charge describes events that occurred before Plaintiff left work for a fourteen-month leave of absence.  Due to the length of Plaintiff's leave, the court finds that the events that occurred after Plaintiff returned to work in December 2011 are beyond the scope of any EEOC investigation that could reasonably be expected to have resulted from the first charge.  In other words, Plaintiff's "post-leave" claims were not administratively exhausted when Plaintiff received a right to sue letter for her first charge of discrimination.  Nor can it be said that the post-leave claims were exhausted by the second charge, as neither the Complaint nor Plaintiff's Motion to Amend allege that Plaintiff has obtained a right to sue letter for that charge.  On the contrary, the Complaint states specifically that no

---

[5] The first two pages of the Motion to Amend include a brief description of events that preceded Plaintiff's leave.  (*See* Filing No. 27 at CM/ECF pp. 1-2.)

right to sue letter has been obtained.  (*See* Filing No. 1 at CM/ECF p. 13.)  Thus, to the extent that the Complaint includes claims based on events that occurred after Plaintiff returned from leave, those claims must be dismissed without prejudice due to Plaintiff's failure to exhaust her administrative remedies.

Although Plaintiff has moved to amend her Complaint, she has not alleged that she has exhausted her administrative remedies for her new claims.  The court will not grant Plaintiff leave to amend her Complaint merely to introduce unexhausted claims, which are essentially nullities.  The court also finds that the "post-leave" allegations set forth in the Motion to Amend are not relevant to the question of whether Plaintiff suffered discrimination before she took leave in October 2010.[6]

---

[6]The Complaint and Plaintiff's Motion to Amend allege that Plaintiff suffered harassment due to her disability.  Hostile work environment claims can sometimes proceed on a "continuing violation theory."  *See, e.g., Jenkins v. Mabus, 646 F.3d 1023, 1027 (8th Cir. 2011)* (applying the theory in a Title VII case).  Under this theory, "[a] charge alleging a hostile work environment claim will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period."  *Id.* (quoting *Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 122 (2002)* (ellipses omitted).  "Acts before and after the limitations period that are so similar in nature, frequency, and severity must be considered to be part and parcel of the hostile work environment that constituted the unlawful employment practice that gave rise to the action."  *Id.* (quoting *Wilkie v. Dep't of Health & Human Servs., 638 F.3d 944, 951 (8th Cir. 2011)*) (alteration brackets, ellipses, and emphasis omitted).  In short, the continuing violation theory allows evidence of a hostile work environment outside the ordinary limitations period (e.g., Plaintiff's post-leave claims) to be considered in support of a claim that occurred within the limitations period (e.g., the pre-leave claims).  The court finds, however, that Plaintiff's fourteen-month leave of absence precludes a finding of a continuing violation.  *See Gipson v. KAS Snacktime Co., 171 F.3d 574, 580 (8th Cir. 1999)* (citing *Konstantopolous v. Westvaco Corp., 112 F.3d 710, 716 (3d Cir. 1997)*, for the proposition that a "seven month gap between harassing incidents allowed 'effects of prior incidents to dissipate'").  Thus, even if the court assumes for the sake of argument that the Complaint and the Motion to Amend allege facts sufficient to state harassment claims, Plaintiff's allegations of post-leave harassment

Next, PayPal argues that Plaintiff's ADA retaliation claim must be dismissed in its entirety, stating, "Smith's retaliation claim, which arises out of her filing her 1st NEOC Charge, is encompassed within her 2nd NEOC Charge, for which Smith admits she has not exhausted her administrative remedies." (Filing No. 24 at CM/ECF pp. 8-9.) To the extent that Plaintiff alleges that she suffered retaliation after she filed her first charge of discrimination, the court agrees that her claim must be dismissed without prejudice due to her failure to exhaust administrative remedies. As will be explained below, however, Plaintiff has made other allegations of retaliation that are not affected by this determination.

PayPal argues next that Plaintiff's remaining claims are partly time-barred because under both the ADEA and ADA, a plaintiff is "required to bring a charge of discrimination within 300 days of the alleged discriminatory act." (Filing No. 24 at CM/ECF p. 9 (quoting *Tusing v. Des Moines Indep. Cmty. School Dist.*, 639 F.3d 507, 520 (8th Cir. 2011).) More specifically, PayPal argues that because Plaintiff's charge of discrimination was filed on January 27, 2011, any "discrete acts" of age-or disability-based disparate treatment that occurred before April 2, 2010, are untimely. (*Id.* (quoting *Onyiah v. St. Cloud State Univ.*, 655 F. Supp. 2d 948, 963 (D. Minn. 2009))).

PayPal's argument is well-taken. Both the ADA and ADEA require an employee to file a charge of discrimination within 300 days of the alleged discrimination; moreover, unless the limitations period is tolled, discrete acts of discrimination that fall outside the period are time-barred. *See Henderson v. Ford Motor Co.*, 403 F.3d 1026, 1032-33 (8th Cir. 2005) (discussing the ADA); *Dorsey v. Pinnacle Automation Co.*, 278 F.3d 830, 835 (8th Cir. 2002) (discussing the ADEA). There are no allegations suggesting that the limitations period can be tolled in this

---

are not relevant to the question of whether Plaintiff was the victim of a hostile work environment before she took leave in October 2010.

case. Thus, to the extent that the Complaint alleges "discrete acts such as termination, failure to promote, [or] denial of transfer" that occurred before April 2, 2010, those events are not actionable "even [if] they are related to acts alleged in timely filed charges." *Wedow v. City of Kansas City, Mo.*, 442 F.3d 661, 670 (8th Cir. 2006) (quoting *Tademe v. St. Cloud State Univ.*, 328 F.3d 982, 987 (8th Cir. 2003)) (alteration brackets omitted).

Nevertheless, "[p]rior acts may be used as background evidence in support of a timely claim." *Id.* (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002)). Also, although "the continuing violation doctrine is not available to toll the limitations [period] or revive a claim involving a separate act of discrimination that occurred beyond the 300-day limitation," *id.*, the court will consider whether the untimely allegations may be considered as part of a hostile work environment claim under the "continuing violation" theory, *e.g., Morgan*, 536 U.S. at 117-18. (*See also supra* note 9.)  In short, although discrete acts of discrimination alleged to have occurred prior to April 2, 2010, are not separately actionable, the court will not disregard them when determining whether the Complaint states timely claims under the ADA or ADEA.

Finally, PayPal argues that when Plaintiff's allegations are reduced "to those that are timely and properly before the Court, what remains is insufficient to survive" a Rule 12(b)(6) motion.  (Filing No. 24 at CM/ECF p. 10.)

In support of its argument, PayPal submits that to avoid dismissal under Rule 12(b)(6), the Complaint must allege all of the elements of a prima facie case under the ADA and/or the ADEA.  (Filing No. 24 at CM/ECF p. 11.)  Specifically, PayPal argues that to state a claim under the ADA, Plaintiff must allege that 1) she was a disabled person within the meaning of the ADA, 2) she was qualified to perform the essential functions of the job, and 3) she suffered an adverse employment action under circumstances giving rise to an inference of unlawful discrimination.  (*Id.* (quoting

*Ryan v. Capital Contractors, Inc.*, 679 F.3d 772, 777 (8th Cir. 2012)*).)  Similarly, PayPal argues that to state a claim under the ADEA, Plaintiff must allege that 1) she is age forty or older, 2) she is qualified for her job, 3) she suffered an adverse employment action, and 4) similarly situated employees were treated more favorably than Plaintiff.  (*Id.* at CM/ECF p. 13 (quoting *Onyiah*, 684 F.3d at 719*).)  These "prima facie" elements correspond to the framework outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  *See Ryan*, 679 F.3d at 776-77 (citing *McDonnell Douglas*); *Onyiah*, 684 F.3d at 719 (same).  However, in *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510-14 (2002), *overruled in part on other grounds by Twombly*, 550 U.S. 544, the Supreme Court clarified that "[t]he prima facie case under *McDonnell Douglas* . . . is an evidentiary standard, not a pleading requirement."  *See id.* at 512 ("Given that the prima facie case operates as a flexible evidentiary standard, it should not be transposed into a rigid pleading standard for discrimination cases.").  The Supreme Court explained,

> This Court has never indicated that the requirements for establishing a prima facie case under *McDonnell Douglas* also apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss.  For instance, we have rejected the argument that a Title VII complaint requires greater "particularity," because this would "too narrowly constric[t] the role of the pleadings."  *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 283, n. 11, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976).  Consequently, the ordinary rules for assessing the sufficiency of a complaint apply. . . .

*Id.* at 511.  The Court added that, "it is not appropriate to require a plaintiff to plead facts establishing a prima facie case because the *McDonnell Douglas* framework does not apply in every employment discrimination case.  For instance, if a plaintiff is able to produce direct evidence of discrimination, he may prevail without proving all the elements of a prima facie case. . . . It thus seems incongruous to require a plaintiff, in order to survive a motion to dismiss, to plead more facts than he may ultimately need

19

to prove to succeed on the merits . . ." *Id.* at 511-12.  Only the requirements of Rule 8(a) need be satisfied to avoid dismissal.  *See id.* at 512-14.

The court's task, then, is not to determine whether the Complaint pleads the elements of a prima facie case of discrimination under the *McDonnell Douglas* framework, but to determine whether the Complaint alleges facts showing plausibly that PayPal has discriminated against Plaintiff based on her age or disability.

The Complaint and Plaintiff's first charge of discrimination describe three incidents that occurred between April 2, 2010, and October 2010.[7]  First, Plaintiff claims that in July 2010, she complained to Michelle Cossky in HR that she was being treated differently because of her age and disability, and Cossky responded by stating that Plaintiff "was not being treated different."  (Filing No. 1 at CM/ECF p. 17.) Second, in September 2010, Plaintiff told Defendant Kuhr that she was upset about the loss of the HR Department, and Kuhr responded, "Maybe now we can get rid of people faster." (*Id.* at CM/ECF p. 11.)  This comment upset Plaintiff, and after she reported it to HR, "things got worse for [her]."  Finally, in September or October 2010, Plaintiff received a Performance Improvement Plan (PIP) and was told to "bring up [her] stats" within 45 days to avoid consequences "up to and including termination." (*Id.* at CM/ECF p. 12.)  Plaintiff reported this to MyHR in Utah, and she claims that her "health continued to decline because of the hostile work environment." (*Id.*)[8]

---

[7]The court considers Plaintiff's charge of discrimination to be incorporated into the Complaint.  *See Blakley v. Schlumberger Tech. Corp.*, 648 F.3d 921, 931 (8th Cir. 2011) (stating that the court has "held that an EEOC charge is a part of the public record and may be considered on a motion to dismiss" even when it is "not included in or attached to" the complaint).

[8]The Complaint also alleges that sometime during 2009 and 2010, Plaintiff was "written up" when she failed to complete all of the work hours that she signed up for; that people continued to manipulate her Stats; that she was not allowed to participate

It is plausible that Plaintiff's complaint to HR in July 2010 constitutes "protected activity" for the purposes of a retaliation claim. *See, e.g., Kasper v. Federated Mut. Ins. Co., 425 F.3d 496, 502 (8th Cir. 2005)* (noting that there was no dispute that Plaintiff engaged in a protected activity by reporting certain conduct to human resources). It is also plausible that PayPal threatened Plaintiff with discipline and/or termination in September or October 2010 because of her complaint. Thus, the court finds that Plaintiff has sufficiently alleged that she suffered retaliation in violation of the ADA and ADEA within the relevant time frame.

The court agrees with PayPal that Plaintiff's allegations otherwise fail to state a claim upon which relief may be granted under the ADA and ADEA. Setting aside the retaliation claim described in the preceding paragraph, Plaintiff has failed to make any allegations about matters that occurred within the actionable time frame that allow the court to infer a connection between PayPal's employment actions and Plaintiff's protected status. Also, it merits mention that Plaintiff's conclusory allegations of a "hostile work environment" during the relevant time frame are insufficient to show plausibly that Plaintiff suffered from age- or disability-based harassment between April and October 2010. Thus, the Complaint does not allege a "continuing violation" that might warrant substantive consideration of the events that predate the limitations period. *See Morgan, 536 U.S. at 117-18* (explaining that an act contributing to a hostile work environment claim must occur within the relevant time before allegations of events outside the period may be considered). Because the Complaint alleges a plausible retaliation claim that falls within the limitations period, it cannot be

---

in a focus group; and that Defendant Kuker attempted to intimidate and embarrass her. (Filing No. 1 at CM/ECF pp. 9-10.) Though it is *possible* that these events occurred within the relevant time frame, the Complaint must do more than allege a mere possibility of liability to survive a Rule 12(b)(6) motion to dismiss. In other words, because the court cannot infer that these actions occurred during the actionable time frame, they do not constitute discrete acts of discrimination upon which Plaintiff can recover.

dismissed in its entirety.   In all other respects, however, Plaintiff's claims of discrimination and retaliation in violation of the ADA and/or ADEA are dismissed without prejudice.  Thus, the court finds that Plaintiff has sufficiently alleged that she suffered retaliation in violation of the ADA and ADEA within the relevant time frame. Pay Pal does not argue that Plaintiff's state-law claims should be resolved differently than Plaintiff's federal-law claims.   Accordingly, Plaintiff's NFEPA and NADEA claims will proceed against Pay Pal.

### D.    PayPal's Motion to Strike

PayPal argues that the court "should strike the allegations which are not properly before the Court." (Filing No. 24 at CM/ECF p. 1.)  Specifically, it argues that Plaintiff's allegations must be stricken to the extent that they 1) fall outside the time period alleged in her first charge of discrimination; 2) fall outside of the 300-day limitations period; or 3) relate to the unexhausted "post leave" claims.   (*Id.* at CM/ECF pp. 5 n.4, 8, 9-10.)   As the court explained previously, Plaintiff's unexhausted claims are dismissed without prejudice, and although alleged events that occurred outside the relevant limitations periods are not actionable as discrete acts of discrimination, it is appropriate to consider them as background information or evidence of a continuing violation.  PayPal's Motion to Strike is denied.

IT IS THEREFORE ORDERED that:

1.     Plaintiff's Motion for Counsel and Motion to Amend the Complaint (Filing No. 27) is denied without prejudice.

2.     The Individual Defendants' Motion to Dismiss (Filing No. 25) is granted, and Plaintiff's ADA, ADEA, NFEPA, and NADEA claims against Defendants Lynette Lane, Carmen Sieburg, Todd England, Troy Kuker, Suzanne Combs-Brown, Michelle Kuhr, and Mike Lenkersdofer are dismissed with prejudice.

3.     Defendant PayPal's Motion to Dismiss and Motion to Strike (Filing No. 23) is granted in part.  The Complaint states a plausible claim that in September or October 2010, PayPal retaliated against Plaintiff in violation of the ADA, ADEA, NFEPA, and NADEA.  In all other respects, Plaintiff's ADA and ADEA claims against PayPal are dismissed without prejudice for the reasons explained in this Memorandum and Order.

4.     In accordance with Federal Rule of Civil Procedure Rule 12(a)(4)(A), PayPal shall file an answer no later than 14 days from the date of this Memorandum and Order.

5.     The clerk's office is directed to update the court's records to reflect that "Troy Kucker" and "Mike Lenkersdofer" are actually Troy Kuker and Mike Lenkersdorfer.

DATED this 4th day of June, 2013.

BY THE COURT:

*s/ John M. Gerrard*
United States District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites.  The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.